# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| ISAIAH SMITH, on behalf of himself §<br>and all others similarly situated, §<br>        *Plaintiffs* §<br>v. §<br> §<br>MV TRANSPORTATION, INC., §<br>        *Defendant* § | CIVIL NO. 1:21-CV-349-DII-SH |

## ORDER

Now before the Court are Defendant's Motion to Compel Discovery Responses, filed January 20, 2023 (Dkt. 49); Plaintiffs' Response to Defendant's Motion to Compel Discovery Responses, filed January 27, 2023 (Dkt. 52); Defendant's Advisory to the Judge Regarding Pending Motion to Compel Discovery Responses, filed April 7, 2023 (Dkt. 66); and Plaintiffs' Response to Defendant's Advisory to the Court, filed April 9, 2023 (Dkt. 67). On February 3, 2023, the District Court referred all nondispositive and dispositive motions in this case to this Magistrate Judge for disposition and report and recommendation, respectively, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 54.

### I. Background

Plaintiff Isaiah Smith brings this collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, alleging that former employer Defendant MV Transportation, Inc. failed to pay him and other similarly situated bus drivers overtime compensation. Plaintiff's Original Complaint (Dkt. 1). Plaintiff was represented by attorney Douglas B. Welmaker when he filed this case. Nineteen other plaintiffs ("Opt-In Plaintiffs")[1] later filed Notices of Consent.

---

[1] Delores Bryant, Mark Adam, Brandy Williams, Gregory Smith, Collette Graham, Barbara Nash, Andres Rodriguez, Leslie Smith, Laurie Ann Molina, Tina Smith, Dalton Sheffield, Steven Laureano, Andrea

1

Defendant alleges that after the parties "agreed to conclusively resolve and settle the matter for a specified amount on June 17, 2022," Defendant drafted a settlement agreement memorializing the terms of the agreement ("Purported Settlement Agreement") for Smith's and Welmaker's review. Dkt. 22 at 2. Defendant alleges that, although counsel for the parties worked diligently to finalize the agreement over the next few months, "Smith frustrated this process by repeatedly contacting Defendant directly with abusive communications and attempting to add non-material terms to the settlement agreement that were not a part of the parties' original discussions." *Id.* The last draft of the Purported Settlement Agreement[2] was exchanged on or about August 8, 2022. *Id.* at 3.

Defendant alleges that Smith refused to sign the Purported Settlement Agreement, stating Smith informed Welmaker on August 16, 2022 that, "despite giving his attorney express written authority to resolve these claims—Smith had no intention of signing the settlement agreement and would be retaining new counsel." *Id.* at 3. Two weeks later, Defendant filed its Motion to Enforce Settlement Agreement and Request for Sanctions against Smith. Within days, on September 2, 2022, Welmaker moved to withdraw as attorney of record for Smith and the Opt-In Plaintiffs, stating that irreconcilable differences had arisen between him, Smith, and the Opt-In Plaintiffs "regarding the appropriate manner in which to proceed in this case." Dkt. 24 at 1.

On September 29, 2022, Nicholas Wagoner filed a Notice of Appearance as counsel of record for Smith and six[3] of the nineteen Opt-In Plaintiffs ("Smith Opt-In Plaintiffs"; collectively with Smith, "Smith Plaintiffs"). Wagoner does not represent the other thirteen Opt-In Plaintiffs.

---

Marcellis, Detrice Lasha Roberson, Clarence Wiltz, Pascal Barczak, Lora Boykin, Adawna DeVine and Lisa Peskin. Dkts. 5, 9-10, and 13-21. Three others provided consent forms to Plaintiffs' original counsel but have not filed consent forms with the Court. Dkt. 22 at 2 n.2.

[2] Dkt. 31-1 (*sealed*).

[3] Adam, Graham, Nash, Smith, Laureano, and Boykin.

Dkt. 34. Wagoner, on behalf of the Smith Plaintiffs, opposes Defendant's motion to enforce the Purported Settlment Agreement. The Smith Plaintiffs argue that the agreement is unenforceable because Smith did not authorize Welmaker to settle this case for the agreed amount, and because the agreement is not the product of a reasonable compromise of a bona fide dispute. Dkt. 38.

On November 2, 2022, the District Court held a status conference during which the Court ordered the parties to conduct limited discovery on issues related to the Motion to Enforce Settlement Agreement and appear for an evidentiary hearing on February 1, 2023.

Defendant served interrogatories and requests for production on the Smith Plaintiffs, Welmaker, and Wagoner, requesting information and communications related to the Purported Settlement Agreement and copies of Smith's engagement agreements with both Welmaker and Wagoner. Dkt. 49-1; Dkt. 60. The Smith Plaintiffs objected that the discovery requests are overbroad, vague, unduly burdensome, and seek information protected by the attorney-client privilege and work-product doctrine. Dkt. 49-1. Welmaker responded to each request by stating: "At the instruction of Isaiah Smith's attorney Nicholas Wagoner, and it is assumed, Isaiah Smith, the undersigned objects to this Request as invasive of attorney client privilege." Dkt. 49-1 at 44-47. Wagoner did not respond to the discovery requests, but has communicated to Defendant's attorney that he considers them inappropriate. *Id.* at 39-40.

Defendant then filed its Motion to Compel, asking the Court to overrule the objections and compel the Smith Plaintiffs and both attorneys to respond fully to the discovery requests. Dkt. 49. Defendant argues that Smith waived his right to assert attorney-client privilege in any communications related to the Purported Settlement Agreement by challenging his attorney's authority to enter into that agreement and its enforceability. Defendant argues that Smith also waived his right to assert attorney-client privilege for any communications related to the

Purported Settlement Agreement by attaching confidential email communications between himself and Welmaker as exhibits to his Response to Defendant's Motion to Enforce Settlement Agreement. *See* Dkt. 38-1 at 22, 34-35 (August 8, 2022 email communications between Smith and Welmaker discussing the terms of the Purported Settlement Agreement). Wagoner acknowledges that Smith waived attorney-client privilege in any communications regarding the Purported Settlement Agreement before August 8, 2022, but argues that there is no waiver for communications after that date.

The District Court cancelled the evidentiary hearing and referred the case to this Magistrate Judge. Dkts. 53 and 54. This Court held a hearing on February 15, 2023, at which Defendant's counsel, Wagoner, and Welmaker all appeared. Dkt. 56.

This Court issued a written Order taking the Motion to Compel under advisement; ordering Welmaker to serve amended responses to Defendant's discovery requests; and ordering Defendant to file an advisory informing the Court whether any of the issues raised in its Motion to Compel have been resolved. Dkt. 57. In its Advisory, Defendant states that it has resolved its discovery dispute with Welmaker, but contends that the Smith Plaintiffs' and Wagoner's "discovery responses remain significantly deficient." Dkt. 66 at 4. The Smith Plaintiffs respond that they have produced all relevant non-privileged documents, and Wagoner objects to the discovery requests directed at him. Dkt. 67.

## II. Legal Standards

Rule 26(b)(1) provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). A discovery request is relevant when the request seeks admissible evidence or is reasonably calculated to lead to the discovery of admissible evidence. *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). The party resisting discovery

must show specifically how each discovery request is not relevant or otherwise objectionable. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).

Generally, the scope of discovery is broad. *Id.* "But discovery, like all matters of procedure, has ultimate and necessary boundaries." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Under Rule 26(b)(2)(C), discovery may be limited if the proposed discovery is outside the scope of Rule 26(b)(1), which permits discovery only of "nonprivileged" information.

A trial court enjoys wide discretion in determining the scope and effect of discovery. *Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017).

### III. Analysis

In its Motion to Enforce Settlement Agreement, Defendant argues that Smith authorized his attorney Welmaker to settle this case on behalf of himself and the other Opt-In Plaintiffs; Smith, Welmaker, Defendant, and Defendant's counsel agreed to settle the case on June 17, 2022; and Smith has reneged on his agreement. Smith responds that he did not authorize Welmaker to settle all Plaintiffs' claims for the amount referenced in the agreement; the Purported Settlement Agreement is unenforceable; and the Purported Settlement Agreement is not a fair and reasonable compromise. Dkt. 38 at 7, 13, 28. The Court first addresses the parties' arguments concerning the scope of the Smith Plaintiffs' privilege waiver.

The attorney-client privilege protects confidential communications between attorneys and their clients and "is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The central purpose of the privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.*

Plaintiffs' claims arise under federal law and are before the Court on federal question jurisdiction under 28 U.S.C. § 1331, so the federal common law of attorney-client privilege governs the Court's analysis. *Willy v. Admin. Rev. Bd.,* 423 F.3d 483, 495 (5th Cir. 2005); *see also Alldread v. City of Grenada*, 988 F.2d 1425, 1433-34 (5th Cir. 1993) (applying federal law to waiver of attorney-client privilege in FLSA action). "Questions of privilege that arise in the course of the adjudication of federal rights are 'governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.'" *United States v. Zolin*, 491 U.S. 554, 562 (1989) (quoting FED. R. EVID. 501).

For a communication to be protected under the attorney-client privilege, the proponent "must prove: (1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997). If the proponent establishes the privilege, the burden shifts to the other party to prove any applicable exceptions, such as waiver. *BDO*, 876 F.3d at 695. "Because the attorney-client privilege has the effect of withholding relevant information from the fact-finder, it is interpreted narrowly so as to apply only where necessary to achieve its purpose." *Id.* (cleaned up).

A client "waives the privilege by affirmatively relying on attorney-client communications to support an element of a legal claim or defense—thereby putting those communications 'at issue' in the case." *Itron*, 888 F.3d at 558. "In other words, when a party entitled to claim the attorney-client privilege uses confidential information against his adversary (the sword), he implicitly waives its use protectively (the shield) under that privilege." *Willy*, 423 F.3d at 497.

The Court finds that, by challenging the Purported Settlement Agreement and asserting that Welmaker lacked authority to settle the case, Smith put his communications ***with Welmaker***

6

about the settlement at issue and thereby waived his right to assert privilege over those communications. *See Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989) ("[W]hen confidential communications are made a material issue in a judicial proceeding, fairness demands treating the defense as a waiver of the privilege.") (citation omitted).[4]

As to waiver by disclosure, the parties agree that Smith waived attorney-client privilege for any communications related to settlement before August 8, 2022 by filing confidential email communications between Smith and Welmaker as exhibits to his Response to Defendant's Motion to Enforce Settlement.[5] They disagree whether Smith's disclosure waived the privilege over communications with counsel occurring after that date.

Defendant requests all (1) communications between Smith and Wagoner regarding discussion of settlement; (2) communications between Smith and the Smith Opt-In Plaintiffs; (3) communications between Smith and individuals not Welmaker, Wagoner, or the Smith Opt-In Plaintiffs; (4) engagement agreements between Smith and Wagoner; and (5) Smith and the Smith Opt-In Plaintiffs' verifications of their interrogatory responses. Defendant also asks the Court to impose sanctions against Plaintiffs for failing to fully respond to their discovery requests. The Court considers each category of requested discovery in turn.

---

[4] *See also Fernandez v. HR Parking Inc.*, 577 F. Supp. 3d 254, 258 n.2 (S.D.N.Y. 2021) ("Whether an attorney was given actual authority to settle a case is a discoverable fact not subject to privilege."); *Watchous Enters., L.L.C. v. Pac. Nat'l Cap.*, No. 16-1432-JTM, 2017 WL 4786185, at *4 (D. Kan. Oct. 24, 2017) ("Because [client] injected the defense that [counsel] did not have the authority needed to bind it to the settlement, [client] has waived the attorney-client privilege on the issue."); *Roberts v. Legacy Meridian Park Hosp., Inc.*, 97 F. Supp. 3d 1245, 1255-56 (D. Or. 2015) (finding that client waived attorney-client privilege where he argued that his attorney lacked actual settlement authority); *Rubel v. Lowe's Home Centers, Inc.*, 580 F. Supp. 2d 626, 628-29 (N.D. Ohio 2008) (holding that client waived attorney-client privilege where he "put his communications with his former attorney about the putative lack of settlement authority in issue").

[5] Dkt. 38-1 at 22, 34-35.

### A. Communications between Smith and Wagoner

Defendant asks Smith to produce any communications between Smith and Wagoner discussing the Purported Settlement Agreement. Dkt. 49-1 at 16 (Request for Production Nos. 9-11). Smith argues that any attorney-client communications after August 8, 2022 are privileged. Defendant argues that Smith's disclosure of the August 8, 2022 emails waived the attorney-client privilege "as to all communications that pertain to the same subject matter of the waived communications." Dkt. 49 at 7. Thus, Defendant argues that any otherwise privileged communications with Wagoner – who did not enter an appearance in this case until September 29, 2022 – related to the settlement of this case regardless of date are discoverable.

"The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005); *see also S.E.C. v. Microtune, Inc.*, 258 F.R.D. 310, 317 (N.D. Tex. 2009) (stating that waiver extends to all communications pertaining to the same subject matter of the waived communication).

> By definition, the attorney-client privilege protects only *confidential* communications. By disclosing such communications to third parties – such as by revealing them in open court—the client waives the privilege. And to prevent selective or misleading disclosures, fairness dictates that the waiver extend to related subject matter. Hence the animating maxim that the privilege cannot "be used as both sword and shield."

*In re Itron, Inc.*, 888 F.3d 553, 558 (5th Cir. 2018).[6] "There is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Fort James*, 412 F.3d at 1349.

---

[6] The Fifth Circuit applied Mississippi privilege law in *Itron* but relied on general principles of federal law to support its holding. *See In re Schlumberger Tech. Corp.*, 818 F. App'x 304, 307 (5th Cir. 2020) (explaining that *Itron* relied on general federal law).

8

The temporal scope of a waiver generally is limited to the period when the disclosing party placed the privileged material at issue. *Global Tubing, LLC v. Tenaris Coiled Tubes, LLC*, No. 4:17-CV-3299, 2021 WL 1169322, at *4 (S.D. Tex. Mar. 26, 2021) (citing *Windbond Elecs. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1375-76 (Fed. Cir. 2001)); *Pei-Hreng Hor v. Ching-Wu Paul Chu*, No. 4:08-CV-3584, 2010 WL 4284902, at *4 (S.D. Tex. Oct. 22, 2010) (same).

Defendant does not dispute that the communications at issue are privileged. The burden thus shifts to Defendant to prove that the waiver exception applies and communications between Smith and Wagoner relating to settlement are discoverable.

Defendant argues that, after "the parties agreed to conclusively resolve and settle the matter for a specified amount on June 17, 2022," Defendant continued to negotiate the terms of the Purported Settlement Agreement with Smith and Welmaker until Smith reneged on August 16, 2022. Dkt. 22 at 2. Thus, the only communications relevant to the Purported Settlement Agreement would have occurred on or before August 16, 2022. The record does not disclose when Wagoner was retained, but he did not make his Notice of Appearance in this case until September 29, 2022. Dkt. 34.

Accordingly, the Court finds that communications between the Smith Plaintiffs and their new counsel, Wagoner, are outside the temporal scope of the waiver of privilege by disclosure. The Court further finds that these communications are not relevant to the limited scope of discovery concerning Defendant's Motion to Enforce Settlement Agreement. *See* FED. R. CIV. P. 26(b)(1) (information must be "relevant" to be discoverable).

### B. Communications between Smith and the Smith Opt-In Plaintiffs

Defendant seeks communications between Smith and Smith Opt-In Plaintiffs Barbara Nash, Mark Adam, and Steven Laureano, and any communications among the Smith Opt-In Plaintiffs related to settlement of this case. *See* Dkt. 49-1 at 13-15 (Request for Production Nos. 2, 4, 6, and 8 to Smith); *id.* at 26-27 (Interrogatory Nos. 3 and 4 to Nash); *id.* at 33-35 (Request for Production Nos. 2-8 to Nash). To the extent that the attorney-client privilege protects these documents from disclosure, the Court agrees that Smith's disclosure of the August 8, 2022 emails extends to relevant communications among Smith and the Smith Opt-In Plaintiffs related to settlement of this case, and that such documents up to the date Smith allegedly reneged on the agreement are relevant.

The Smith Plaintiffs represent that they have made reasonable efforts to find and produce communications among themselves about potential settlement, and that they have "searched their mobile devices and email inboxes for responsive text messages and emails that they may have sent or received before August 8, 2022." Dkt. 67 at 3. Therefore, the Court **ORDERS** Plaintiffs to produce to any such responsive documents from August 8, 2022 through August 16, 2022.

### C. Communications between Smith and Individuals other than Welmaker, Wagoner, or the Smith Opt-In Plaintiffs

Defendant seeks communications between Smith and individuals not Welmaker, Wagoner, or the Smith Opt-In Plaintiffs related to the settlement of this matter. *See* Dkt. 49-1 at 8 (Interrogatory No. 4); *id.* at 16-17 (Requests for Production Nos. 12-14). These documents are not privileged and may be relevant within the limited scope of discovery ordered by the District Court. The Smith Plaintiffs represent that they have produced numerous emails between Smith and others. Dkt. 67 at 4. The Court **ORDERS** Smith Plaintiffs to supplement their production with any further responsive communications through August 16, 2022.

### D. Engagement Agreement between Smith and Wagoner

Defendant seeks the engagement letter between Smith and Wagoner. Because Smith did not retain Wagoner until after the temporal period related to the Purported Settlement Agreement, the Court finds that the engagement letter is protected by attorney-client privilege that has not been waived by disclosure and is not relevant to Defendant's Motion to Enforce Settlement Agreement. The Court **DENIES** the Motion as to this request.

### E. Wagoner Discovery Responses

Defendant propounded on Wagoner interrogatories and requests for production seeking, *inter alia*, all correspondence and communications related to settlement of this suit between Wagoner and Smith, Wagoner and the Opt-In Plaintiffs, and Wagoner and Welmaker. Dkt. 60-1. For the reasons explained above, the Court finds that these requests are not relevant to the Motion to Enforce Settlement Agreement. The Court **DENIES** the Motion as to this request.

### F. Smith and the Smith Opt-In Plaintiffs' Verifications of their Interrogatory Answers

Because Plaintiffs have agreed to provide Defendant with all verifications, this request is moot.

## IV. Conclusion

For these reasons, Defendant's Motion to Compel Discovery Responses (Dkt. 49) is **GRANTED IN PART, DENIED IN PART, and DISMISSED AS MOOT IN PART**. Specifically, the Court:

- **GRANTS** the Motion as to communications related to settlement between Smith and (1) the Smith Opt-In Plaintiffs and (2) individuals not Welmaker, Wagoner, or the Smith Opt-In Plaintiffs on or before **August 16, 2022**.

- **DENIES** the Motion as to (1) communications between Smith and Wagoner; (2) engagement agreements between Smith and Wagoner; and (3) discovery requests to Wagoner.

- **DISMISSES** as **MOOT** the Motion as to interrogatory verifications.

The Court also **DENIES** Defendant's request to impose sanctions and any other relief not expressly granted herein.

The Court will address Defendant's Motion to Enforce Settlement Agreement (Dkt. 22) and Welmaker's Motion to Withdraw (Dkt. 24) in a separate Report and Recommendation after conducting an evidentiary hearing.

**SIGNED** on May 15, 2023.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE